IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

RANDY CLANTON, JR., SAMUEL
CLANTON, HERITAGE FARMS, GUY
MARTIN WARDLAW, CRAIG WARDLAW,
MARTY LEE WARDLAW, J&B CARE, INC.,
and PATTSVILLE FARMS, INC.                                             PLAINTIFFS

v.                                          Case No. 1:13-cv-01063

UNITED STATES OF AMERICA Acting
Through the United States Department of
Agriculture, Risk Management Agency                                    DEFENDANT

## MEMORANDUM OPINION

Before the Court is Plaintiff's Motion for Summary Judgment.  (ECF No. 10).  Defendant

did not file a response.  Instead, Defendant filed its own Motion for Summary Judgment and For

Leave to File Exhibit not part of the Administrative Record.  (ECF No. 14).  Plaintiffs did not

respond to Defendant's Motion.

Plaintiffs assert that they are entitled to summary judgment because the actions of the

Defendant were arbitrary and capricious, an abuse of discretion, not in accordance with law and

unsupported by substantial evidence.  Defendant asserts that the Court lacks jurisdiction over two

of the three contested final agency determinations, the Administrative Procedure Act is inapplicable

to Plaintiffs' challenges, and the federal agencies acted within the applicable regulations when

interpreting the regulations.  The Court finds these matters ripe for its consideration.

## I.  Background

The Federal Crop Insurance Act ("FCIA"), 7 U.S.C. § 1501-24, is designed to "promote the

national welfare by improving the economic stability of agriculture through a sound system of crop

insurance and providing the means for the research and experience helpful in devising and

establishing such insurance." 7 U.S.C. § 1502(a).  Congress created the Federal Crop Insurance

Corporation ("FCIC"), under the supervision of the Risk Management Agency ("RMA") of the

United States Department of Agriculture ("USDA"), to administer the FCIA.  7 U.S.C. § 1503,

§ 6933(a), (b)(1)-(3); 7 C.F.R. § 400.701.  The FCIA empowers the FCIC to provide crop insurance

directly to farmers or to provide reinsurance to private approved insurance providers who sell federal

crop insurance policies.  7 U.S.C. § 1508(a)(1) & (k).  In order to qualify for reinsurance through the

FCIC, the policies written by approved private insurers must comply with the FCIA and its

accompanying regulations.  Consequently, "[t]he FCIA generally establishes the terms and

conditions of insurance, . . . even though the crop insurance policy is between the farmer and an

approved insurance provider." *Davis v. Producers Agr. Ins. Co*, 762 F.3d 1276, 1284 (11th Cir.

2014).

Plaintiffs in this action were all tomato producers in Bradley County, Arkansas in 2009, and

each Plaintiff purchased a "Guarantee Production Plan of Fresh Market Tomato Federal Crop

Insurance" policy, through a private insurance provider approved by the FCIC, for the 2009 crop

year.  There was an unexpected freeze in Bradley County in April 2009 and then heavy unexpected

rainfall in May 2009.  These weather events caused damage to the Plaintiffs' crops, and they

subsequently filed claims under their crop insurance policies.  These types of "Guarantee Production

Plan of Fresh Market Tomato Federal Crop Insurance" policies are governed by 7 C.F.R. § 457.128,

and certain requirements for insurability are set forth in that regulation.  Specifically, 7 C.F.R.

§ 457.128(9)(a)(2), in relevant part, provides:

2

We do not insure any acreage of tomatoes:

. . .

> (iii) On which tomatoes, peppers, eggplants, or tobacco have been grown within the previous two years unless the soil was fumigated or nematicide was applied before planting the tomatoes, except that this limitation does not apply . . . if otherwise specified in the Special Provisions[.]

7 C.F.R. § 457.128(9)(a)(2)(iii).

The Special Provision for Bradley County, Arkansas, provided:

> In regards to the policy provisions, fumigation is not required if a valid Nematode Analysis Test is on file with the Insurance Provider and confirms that the planted acreage is not infested to a concentration exceeding 75 root knot nematodes per pint of soil. Test samples must be taken while the plants are actively growing between fruit set and end of production in accordance with Cooperative Extension Service guidelines during the immediately preceding crop year and tested by the Nematode Diagnostic Clinic, University of Arkansas, SW Research and Extension Center.

Special Provisions of Insurance for Bradley County, Arkansas, Fresh Market Tomatoes, 2009.[1]

Plaintiffs' 2009 crop insurance claims were denied by their private insurance providers, who determined that Plaintiffs' tomato crops were uninsurable, under 7 C.F.R. § 457.128 Section 9(a)(2)(iii), because Plaintiffs had planted tomatoes within the previous two years, had not fumigated or applied nematicide prior to planting, and did not have a valid nematode analysis test on file with the insurer. Plaintiffs contended that their crop insurance claims should not be denied for their failure to take the required protective measures against nematodes because their crops had been damaged by weather, not nematodes. Plaintiffs argued that their failure to fumigate, apply

---

[1] In their Motion for Summary Judgment, Plaintiffs attempt to argue to the Court that the federal regulations themselves, specifically the issuance of 7 C.F.R. § 457.128 Section 9(a)(2)(iii) and the Special Provision for Bradley County, Arkansas are unlawful, beyond merely the final agency interpretations of those regulations. Plaintiffs' Complaint did not challenge any of the regulations, but instead argued their interpretations through the FADs. These unpled issues are not properly before the Court. Thus, Plaintiffs' arguments in that regard are hereby dismissed without consideration. *See* Fed. R. Civ. P. 8(a); 12(b)(6).

nematicide, or have a valid Nematode Analysis Test on file should only prevent farmers from being insured against damage caused by nematodes.  The insurance provider disagreed, reading the requirements of Section 9(a)(2)(iii) to preclude insurance coverage for all types of losses, if the provisions' fumigation or nematicide requirements are not met.

When parties in this type of insurance relationship dispute the interpretation of the policy, they must make a joint request for an interpretation by the FCIC.  The FCIC's interpretations, issued in the form of Final Agency Determinations ("FADs"), are "binding on all participants in the Federal crop insurance program." 7 C.F.R. § 400.765(c).  The FCIC "will not interpret any specific factual situation or case." 7 C.F.R. § 400.768(a).  Interpreting the plain language of 7 C.F.R. § 457.128 Section 9(a)(2)(iii) and the Special Provision, the FCIC concluded that Section 9(a)(2) specifies when acreage is not insurable, and nothing in that section or the Special Provision ties insurability to a specific cause of loss.  The FCIC then issued FAD-143, which stated that "[o]nce the acreage is not insurable because the requirements have not been met, no cause of loss is covered."

Separate Plaintiffs, Guy Martin Wardlaw, Craig Wardlaw, Marty Lee Wardlaw, J & B Care, Inc., and Pattsville Farms, Inc., filed an appeal of FAD-143 with the National Appeals Division of USDA.  After a hearing, the hearing officer upheld the interpretation.  These separate Plaintiffs then requested Director Review of the Hearing Officer's determination.  On May 20, 2012, the National Appeals Division of USDA issued the Director Review Determination upholding the determination.[2]

Subsequently, a private insurance provider requested another FAD interpreting the terms "fumigation" and "nematicide."  Specifically, the provider asked whether the terms would include the planting of an intervening brassicus crop, because some Plaintiffs argued that they had fumigated

---

[2]The Director Review Determination was the agency's "administratively final determination." 7 C.F.R. § 400.768(g).

their soil prior to planting their tomatoes by planting a brassicus crop which acted as a biofumigant of nematodes.  The Plaintiffs submitted a study performed by the University of Arkansas for the USDA, Agricultural Research to support their argument.  The FCIC then issued FAD-164, determining that the terms were given their common meanings, which did not include the planting of an intervening brassicus crop.

Plaintiffs brought this action for judicial review of a final agency action under the Admininstrative Procedure Act.  The Plaintiffs request that the Court enter an injunction to set aside the directives because they are arbitrary, capricious, an abuse of discretion, in excess of the USDA's statutory authority, not supported by substantial evidence, puts tomato farms under undue hardship, and is not supported by law.[3]

## II.  Discussion

### A.  Jurisdiction

Plaintiffs assert that the action is properly before the Court under the provisions of the Administrative Procedure Act.  Defendants argue that the Court is without jurisdiction to consider Plaintiffs' arguments regarding FAD-164 because Plaintiffs did not obtain an administratively final determination from the Director or the National Appeals Division for that FAD prior to filing the instant lawsuit.

In 7 C.F.R. 400.768(g), the regulations governing FADs provide that "[b]efore obtaining judicial review of any final agency determination, a person must obtain an administratively final determination from the Director of the National Appeals Division on the issue of whether the final

---

[3]Plaintiffs also include FAD-123 in their Complaint, but do not address that Final Agency Determination in their Motion for Summary Judgment.

agency determination is a matter of general applicability." Because Plaintiffs did not obtain an administratively final determination from the Director of National Appeals Division with regard to FAD-164 prior to filing the instant suit, the Court is without jurisdiction to consider it. Accordingly, Plaintiffs challenges to FAD-164 must be dismissed for want of jurisdiction.[4]

Defendants also argue that the Administrative Procedures Act ("APA") does not provide the Court with jurisdiction over FAD-143. They argue that the APA only provides for judicial review when that person suffers a legal wrong "because of agency action, or [is] adversely affected or aggrieved by agency action within the meaning of the relevant statute." 5 U.S.C. § 702. Defendants argue that Plaintiffs were not harmed by the FAD because it simply interpreted a regulation already in place. Instead, they were harmed by their failure to follow the requirements in the contract. However, the Court finds that the APA grants the federal district court jurisdiction over this kind of dispute. The interpretation of the regulation is an agency action. The agency could have interpreted the regulation differently, in a way that did not harm the Plaintiffs. However, as the interpretation stands, the Plaintiffs were not able to recover certain insurance monies to which they believe they are entitled. Thus, they are harmed and afforded the review of a federal district court.

## B. Merits

Plaintiffs request the Court to hold unlawful FAD-143 and set aside the same under the APA, 5 U.S.C. § 706(2), because it is arbitrary, capricious, an abuse of discretion, and in excess of the USDA's statutory authority and is inconsistent with and frustrates the purposes of the Act. Defendants argue that in issuing the FAD, the FCIC followed proper procedures and interpreted its

---

[4]Additionally, Plaintiffs lack standing to bring a claim under FAD-123 because it interpreted Section 9(b)(3) of the "Fresh Market Tomato (Dollar Plan) Crop Provisions," a federal crop insurance policy that is inapplicable to Plaintiffs and not available to Arkansas tomato farmers.

own regulation according to the plain language.

The APA sets forth the applicable standards of review to be applied by this Court in reviewing agency determinations such as that of the Defendant. 5 U.S.C.A. §706. Under the APA, this Court, "shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or found to be "in excess of statutory jurisdiction, authority or limitations, or short of statutory right." 5 U.S.C.A. §706 (2)(A) and §706(2)(C). Under the "arbitrary and capricious" standard, "the reviewing court [must] engage in a substantial inquiry . . . to decide whether the [Defendant] acted within the scope of [its] authority . . . [and] whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 415-16 (1971) *overruled on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977). The standard of review is a narrow one. A decision is arbitrary and capricious if the agency "has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or product of agency expertise." *Downer v. United States*, 97 F.3d 999, 1002 (8th Cir. 1996) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)). The Court "must give substantial deference to agency determinations," *Downer*, 97 F.3d at 1002, and should only reject an agency's determination of its own regulations when the interpretation is "unreasonable, plainly erroneous, or inconsistent with the regulation's plain meaning." *Utah Environmental Congress v. Richmond*, 483 F.3d 1127, 1134 (10th Cir. 2007) (citation omitted). The Supreme Court has made clear that a court is not to substitute its judgment for that of the agency,

and should "uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned." *Bowman Transp., Inc. v. Arkansas-Best Freight System, Inc.*, 419 U.S. 281, 286 (1974).

Plaintiffs assert that the agency ignored relevant factors and did not consider the facts that were known to it. Specifically, Plaintiff argues, the agency ignored the fact that Bradley County, Arkansas did not have problems with nematodes, and thus, it was unnecessary to have farmers conduct a prerequisite test of which there was no clear risk. The Plaintiffs argue that, by paying claims and never asking for any proof of fumigation or the nematode tests, the agency lulled the tomato farmers into a false sense of security. Plaintiffs argue that the agency is not following their precedent and prior practice, and therefore a denial of their claims is arbitrary and capricious and the RMA and FCIC should be estopped from denying Plaintiffs' claims.

It is undisputed that none of the Plaintiffs had fumigated or applied nematacide prior to planting their 2009 tomato crops, nor did any of the Plaintiffs have a valid Nematode Analysis Test on file with their insurance provider in accordance with the stated requirements of the insurance contract. However, 7 C.F.R. § 400.768(a) specifically prohibits the FCIC from considering specific factual situations. FADs are generally applicable interpretations by the agency of its own regulations, which are binding on all federal crop insurance participants—specific facts, such as the prevalence of nematodes on a certain producer's land, cannot be taken into account. If they were, the FCIC would not be following its own regulations. The agency followed the proper procedures, acted according to the applicable regulations, and interpreted Section 9(a)(2)(iii) according to its plain and unambiguous language.

Moreover, this interpretation of the regulation through FAD-143 is afforded great deference. The interpretation is reasonable, not plainly erroneous, and consistent with the regulation's plain

meaning.   The Court finds that the agency considered the relevant factors that the regulations ascribed for consideration, namely the plain language of the regulation.   The Court can easily ascertain the rationale of the agency through its interpretation and finds that the agency committed no clear error of judgment.

### III.  Conclusion

Accordingly, Plaintiffs' Motion for Summary Judgment (ECF No. 10) is hereby DENIED. Defendant's Motion for Summary Judgment (ECF No. 14) is hereby GRANTED.  Defendant's request for leave to file an exhibit not part of the administrative record is DENIED AS MOOT.

**IT IS SO ORDERED**, this 4th day of February, 2015.


/s/ Susan O. Hickey
Susan O. Hickey
United States District Judge